IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **TIKISHIA R. J.,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 22-CV-400-MTS |
| | ) |
| **KILOLO KIJAKAZI, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Tikishia R. J. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account her age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id*. at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is

"more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On May 8, 2008, Plaintiff filed an application for Title XVI supplemental security income (42 U.S.C. § 1381, *et seq.*) under the Social Security Act. (R. 112-14). She alleged an inability to work beginning on October 1, 2007, due to pain from hip surgeries with plates/screws, torn ACL in the left knee with plates/screws, back pain, depression, and anxiety. (R. 133-34, 151). Plaintiff was forty-nine years old at the time of the ALJ's decision. (R. 112, 141). She has an eighth-grade education and no past work. (R. 1289, 1301).

Plaintiff's application was denied initially and upon reconsideration. (R. 53-56, 60-62). After a hearing before an ALJ, Plaintiff was denied benefits on January 6, 2010. (R. 11-20). She appealed the decision to this Court, and the ALJ's decision was reversed and the case remanded for further proceedings in Case No. 12-CV-1-FHM. (R. 642-47). After a second hearing, Plaintiff again was denied benefits on March 26, 2014. (R. 655-70). Plaintiff sought review by the Appeals

Council, which remanded the case to another ALJ on July 23, 2015, for the resolution of certain issues. (R. 679-81). Plaintiff participated in a third hearing and was denied benefits on January 13, 2016. (R. 505-22). The Appeals Council denied review. Plaintiff appealed the decision to this Court, and the ALJ's decision denying Plaintiff benefits was affirmed on August 12, 2020, in Case No. 19-CV-135-FHM. (R. 1307-14).

Plaintiff appealed the decision to the Tenth Circuit Court of Appeals. While pending, the United States Supreme Court issued its decision in *Carr v. Saul*, 141 S. Ct. 1352 (2021), deciding an Appointments Clause challenge, which was an issue in Plaintiff's case. The Tenth Circuit remanded Plaintiff's case for further proceedings consistent with *Carr*, which prompted this Court to vacate the ALJ's prior decision and remand the case. (R. 1315-18). On July 12, 2021, the Appeals Council remanded the case based on the Appointments Clause issue to a new ALJ. It noted in its remand order that Plaintiff had filed a subsequent Title XVI application for benefits on January 8, 2018, and the Social Security Administration ("SSA") had found Plaintiff disabled as of that date. However, the Appeals Council limited the period at issue for Plaintiff's current case to the time period prior to January 8, 2018. (R. 1321-22).

On May 5, 2022, ALJ Christopher Hunt conducted an administrative hearing. (R. 1264-1306). The hearing was held by teleconference pursuant to COVID-19 procedures. (R. 1241). ALJ Hunt issued a decision on May 17, 2022, denying benefits and finding Plaintiff not disabled. (R. 1241-55). Because Plaintiff did not seek review of the decision, ALJ Hunt's decision became the final decision of the Commissioner for purposes of further appeal. 20 C.F.R. § 416.1484.

## Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since May 8, 2008, the application date. (R. 1244).

At step two, he found Plaintiff suffered from severe impairments of chronic deformity and osteoarthritic changes in the bilateral hips (with hardware after surgery), degenerative disc disease of the lumbar spine, left knee medial meniscus tear (with small, flipped fragment, recurrent full thickness anterior cruciate ligament tear), medial and lateral compartment chondrosis, anxiety disorder, panic disorder with agoraphobia, and depressive disorder. (R. 1244). The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 1244-45). Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a)" with the following additional limitations:

> [T]he claimant could lift no more than ten pounds occasionally and less than ten pounds frequently. She could sit for six hours in an eight-hour day and stand or walk two hours in an eight-hour day. She could have occasionally climbed ramps and stairs, balanced, stooped, kneeled, crouched, and crawled. The claimant could not climb ladders, ropes, or scaffolding or be exposed to unprotected heights, dangerous machinery, or dangerous objects. She could have performed simple but no detailed or complex tasks. She could have tolerated cursory and superficial contact with coworkers and supervisors but not contact with the general public, working with things rather than people. The claimant could not have performed work with strict production standards such as fast-paced integral team assembly line work or poultry processing.

(R. 1246).

At step four, the ALJ determined Plaintiff had no past relevant work. (R. 1253). After consultation with a vocational expert ("VE"), the ALJ concluded at step five that Plaintiff could perform the representative jobs of document preparer, addresser, election clerk, and escort vehicle driver, all of which he found existed in significant numbers in the national economy. (R. 1254-55, 1301-06). As a result, the ALJ found Plaintiff had not been under a disability since May 8, 2008, the date the application was filed. (R. 1255).

**Errors Alleged for Review**

Plaintiff raises three allegations of error in her challenge to the Commissioner's denial of benefits on appeal: (1) the ALJ failed to fully develop the case record; (2) the ALJ's RFC assessment is not supported by substantial evidence; and (3) the ALJ utilized an erroneous burden of proof. (Docket No. 12 at 7-14). For the reasons discussed herein, the Court finds that Plaintiff's arguments are without merit.

**Development of the Record**

Plaintiff argues the ALJ failed to develop the record because he did not obtain updated physical and mental consultative examinations and because he failed to include evidence in the record from Plaintiff's subsequent application of January 8, 2018. (Docket No. 12 at 7-10). The Commissioner counters that the ALJ was not required to further develop the record because it contained sufficient evidence upon which the ALJ could base his decision for the relevant time period. (Docket No. 16 at 4-6).

Although the ALJ must "ensure that an adequate record is developed . . . consistent with the issues raised[,]" he "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1164, 1166 (10th Cir. 1997) (quotations omitted). "A consultative examination may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or 'additional tests are required to explain a diagnosis.'" *Jazvin v. Colvin*, 659 Fed. Appx. 487, 489 (10th Cir. 2016), quoting *Hawkins*, 113 F.3d at 1166; *see also* 20 C.F.R. § 416.919a(b). If there is sufficient information in the record for the ALJ to make a disability determination, there is no need for further development of the record with a consultative examination. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008).

Moreover, when a claimant is represented by counsel at the administrative hearing, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored . . . [and] may ordinarily require counsel to identify the issue or issues requiring further development." *Hawkins*, 113 F.3d at 1167-68, citing *Glass v. Shalala*, 43 F.3d 1392, 1394-96 (10th Cir. 1994). "In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id*. at 1168.

Plaintiff asserts the ALJ should have ordered a mental consultative examination with a neuropsychologist and a physical consultative examination with a pain specialist, arguing that the more "current testing and examinations could be viewed in conjunction with the past examinations to establish a longitudinal view of [her] physical and mental condition." (Docket No. 12 at 8-9). This argument, however, fails for two reasons. First, a review of the decision shows ample evidence from the relevant time period upon which the ALJ based his disability determination, including Plaintiff's medical records, testimony, physical and mental consultative examinations, prior administrative medical findings by the state agency medical and psychological consultants, and hearing testimony from medical expert Subramaniam Krishnamurthi, M.D. (R. 1246-53). Second, Plaintiff's counsel did not request any additional testing or consultative examinations at the most recent administrative hearing. In fact, when specifically asked about the contents of the record and whether he had "[a]ny objections or additions[,]" Plaintiff's counsel responded he had "[n]o objections." (R. 1267).

Further, the Court finds no error by the ALJ for not including evidence from Plaintiff's subsequent application when considering her current application. When the Appeals Council entered its order remanding the case, it noted Plaintiff filed a subsequent claim for Title XVI

7

benefits on January 8, 2018. Plaintiff's application was granted at the agency level, and she was found disabled as of the application date. Regarding her current application, the Appeals Council provided that "[u]nless the determination is reopened and revised in accordance with applicable regulations, the period before the [ALJ] will be limited to that period prior to January 8, 2018." (R. 1321-22).

Here, although Plaintiff's counsel submitted a notice regarding possible issues on remand prior to the most recent administrative hearing, which included a reference to certain records associated with Plaintiff's subsequent application (R. 1464), the letter fails to point out how the records relate to the relevant time period. Moreover, counsel made no mention of the issue at the administrative hearing. He did not specifically request that the subsequent application be reopened, attempt to supplement the record with any additional evidence, nor did he voice any concern that the record was incomplete. Instead, as previously noted, he indicated he had "no objections" when asked about additions or objections to the exhibits in the record. (R. 1267). Thus, in his decision, the ALJ referred directly to the Appeals Council's remand order and determined the current decision was limited to the period of May 8, 2008, the date of Plaintiff's application, through January 7, 2018, and concluded Plaintiff was not disabled. (R. 1241-42, 1253, 1255).

### The ALJ's RFC Assessment

Plaintiff also argues the ALJ's RFC assessment is not supported by substantial evidence. She contends the evidence that she walks with a cane, can only sit for thirty minutes at a time, must elevate her legs for pain relief, and the severity of her pain do not support the ALJ's determination that she can perform sedentary work with her hip problems and chronic pain for "eight hours a day, five days a week on a sustained basis." (Docket No. 12 at 11-12). Plaintiff

8

also asserts that the hearing testimony by Dr. Krishnamurthi, the medical expert, does not constitute substantial evidence supporting the RFC. She further argues the ALJ improperly relied upon the absence of evidence when determining the RFC. The Commissioner maintains the ALJ's RFC assessment is supported by substantial evidence. (Docket No. 16 at 12).[1]

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id*. at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id*. He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

---

[1] Although the Commissioner's response addresses Plaintiff's physical and mental RFCs (Docket No. 16 at 7-12), Plaintiff's briefing only includes arguments pertaining to her physical RFC. (Docket No. 12 at 11-12; Docket No. 17 at 1-2). Thus, the Court does not address Plaintiff's mental RFC.

In the decision, the ALJ discussed the medical evidence from the relevant time period in detail. (R. 1247-51). He specifically acknowledged the results of X-rays of Plaintiff's hips from 2008 and 2009 (R. 241, 302, 406-07, 1248), X-rays of her lumbar spine from 2008 (R. 240, 1248), X-rays of the hips from November of 2013 (R. 1174-75, 1226-29, 1249), an MRI of her lumbar spine in January of 2014 (R. 1218-19, 1250), and an MRI of her left knee from February of 2015 (R. 1235-36, 1251). The ALJ also discussed Plaintiff's examination findings, including findings from consultative examinations and treatment records:

> Examinations showed reduced and painful range of motion in the bilateral hips, decreased lumbar range of motion, severe leg length discrepancy, tenderness in the lumbar spine and paraspinal musculature, and difficulty rising from a seated position and climbing on the examination table [R. 194-201, 447-58, 928-30, 982-88, 1200-29, 1230-34]. However, examinations also routinely revealed negative straight leg raises and 5/5 strength, intact sensation, intact range of motion, and normal reflexes in the lower extremities [R. 194-201, 948-54; 982-88, 1168-76, 1200-29, 1230-34]. The claimant's gait ranged from limping [R. 194-201], to able to ambulate [R. 202-06, 948-54], to slight limp [R. 1138-43], to "markedly" antalgic [R. 1226-27], but on only one occasion was the claimant observed to use an assistive device [R. 1220-22] and by November 2014, her gait was described as "mildly" antalgic [R. 1230-31].

(R. 1251; *see also* 1247-51). He further addressed Plaintiff's testimony, including that she had used a cane for eight years, elevated her legs when sitting, could only sit for thirty minutes at a time (R. 1246-47, 1291, 1294), and considered evidence regarding her level of pain. (R. 1248, 1249, 1250).

However, the ALJ determined the severity of Plaintiff's symptoms was undermined by her failure to comply with recommended treatment. He referenced her failure to follow recommendations for physical therapy, canceling appointments with a referred physician, and not showing up to another appointment. (R. 1013, 1248, 1251). Although Plaintiff followed up with a recommended pain management physician, she did not follow up with a recommended hip surgeon and again did not seek out recommended physical therapy or a shoe lift. (R. 1200-29,

1230-34, 1249, 1251-52). Further, she did not show up for a scheduled epidural steroid injection of her lumbar spine. (R. 1230-31, 1250, 1252).

Regarding the opinion evidence, the ALJ considered the opinions of the state agency physicians, but he assigned them less weight than the opinion expressed by Dr. Krishnamurthi. (R. 1253).[2] The ALJ included more restrictive limitations in the RFC, as the state agency consultants merely found Plaintiff could do sedentary work with no additional limitations. (R. 227-34, 278). Plaintiff challenges the ALJ's reliance on Dr. Krishnamurthi's testimony wherein he expressed his opinion that Plaintiff could perform sedentary work during the relevant time period. She argues Dr. Krishnamurthi's opinion does not rise to substantial evidence to support the RFC assessment because: (1) he testified there was no difference in Plaintiff's condition between 2008 and 2018; (2) Dr. Krishnamurthi is not an orthopedic specialist and has never performed hip surgery; and (3) Dr. Krishnamurthi admitted during his testimony that his opinion was just "a GUESS." (Docket No. 12 at 9; Docket No. 17 at 1-2).

In the decision, the ALJ summarized Dr. Krishnamurthi's testimony from the hearing. Dr. Krishnamurthi testified he reviewed the record and believed it contained sufficient evidence for him to form an opinion regarding Plaintiff's physical limitations. (R. 1269). He recognized Plaintiff had undergone bilateral hip surgery at age eleven or twelve, ACL repair of the left knee in 2000, and suffered from degenerative disc disease of the lumbar spine, all of which resulted in pain. (R. 1247, 1269-70). He determined Plaintiff did not meet or equal a listing and limited her to lifting ten pounds frequently and twenty pounds occasionally, sitting for six hours in an eight-hour workday, and standing and walking a combined total of two hours in an eight-hour workday.

---

[2] The Court notes that because Plaintiff's application was filed before March 27, 2017, the ALJ evaluated the opinion evidence under 20 C.F.R. § 416.927. (R. 1246).

11

She could take standard breaks. Plaintiff had no limitations in her upper extremities for reaching, handling, fingering, feeling, or grasping. She could not climb ladders, scaffolds, or ropes, but she could occasionally climb stairs, bend, stoop, crawl, crouch, and kneel. Plaintiff could not be exposed to heights or dangerous machinery. (R. 1247, 1270, 1276-77).

Plaintiff's counsel's examination of Dr. Krishnamurthi at the hearing centered on counsel's trying to determine when Plaintiff was not disabled prior to January 8, 2018, the date the SSA determined Plaintiff was disabled based upon a subsequent Title XVI application. (R. 1247, 1270-73). Although Plaintiff is correct that Dr. Krishnamurthi testified he did not see a difference in Plaintiff's impairments from 2008 to 2018, he also testified he was providing an opinion on Plaintiff's functional limitations based upon her impairments and could not give an opinion on disability. (R. 1247, 1272-74). Moreover, to the extent Plaintiff is challenging Dr. Krishnamurthi's qualifications to serve as a medical expert in the case, the ALJ explicitly asked Plaintiff's counsel at the hearing if he had "any objection to Dr. Krishnamurthi's qualifications to serve as a medical expert," and counsel responded "[n]o." (R. 1269). Although Dr. Krishnamurthi testified he is not an orthopedist and has not performed hip surgeries, he is an internist and has treated patients with arthritis and joint issues. (R. 1247, 1278-79). Further, and contrary to Plaintiff's argument, a full review of Dr. Krishnamurthi's testimony shows that his opinions regarding Plaintiff's limitations were not based upon a "guess." He acknowledged Plaintiff had pain, which he considered subjective, but also considered her complaints of pain with the objective evidence, including imaging and examination findings, when determining Plaintiff's functional limitations for the relevant time period. (R. 1247, 1274-77, 1280-81).

The Court finds no merit to Plaintiff's arguments regarding Dr. Krishnamurthi's opinion. The ALJ assigned Dr. Krishnamurthi's opinion "significant weight" and thoroughly explained in

the decision how his opinion is consistent with the objective medical evidence in the record. (R. 1253). He further determined that Dr. Krishnamurthi's opinion "is consistent with [Plaintiff's] failure to follow through with treatment modalities (injections, physical therapy, a shoe lift, evaluation by Dr. Mittal) designed to lessen her pain[.]" *Id*. Thus, his opinion constituted substantial evidence upon which the ALJ could rely when determining Plaintiff's RFC.

Plaintiff also asserts the ALJ improperly relied upon the absence of evidence from 2015-2018 when assessing the RFC, and it is therefore not supported by substantial evidence. (Docket No. 17 at 2). In support of her argument, Plaintiff relies on *Thompson v. Sullivan*, 987 F.2d 1482 (10th Cir. 1993), wherein the ALJ determined the claimant retained an RFC for a full range of sedentary work, but in making the determination he "relied on the absence of contraindication in the medical records." *Id*. at 1491. The court noted the "absence of evidence is not evidence[,]" and determined the claimant's "RFC level [was] not supported by substantial evidence." *Id*. A review of the ALJ's decision, however, reveals that *Thompson* is easily distinguishable from this case. Although his chronological discussion of the evidence included a reference that "[t]here are no further medical records until, 2020, after the claimant started receiving disability benefits[,]" (R. 1251), as discussed herein, there was plenty of other evidence in the record upon which the ALJ based the RFC assessment that Plaintiff could perform sedentary work with additional limitations.

Overall, Plaintiff's arguments regarding Plaintiff's physical RFC appear to be a request for the Court to reweigh the evidence, which it cannot do. *See Casias*, 933 F.2d at 800. As demonstrated herein, the ALJ's RFC assessment is supported by substantial evidence.

**Burden of Proof**

Plaintiff further contends the ALJ utilized an erroneous burden of proof when determining the RFC. In support of her argument, Plaintiff relies on *Miller v. Chater,* 99 F.3d 972 (10th Cir. 1996), and asserts that because the SSA determined she was disabled beginning on January 8, 2018, the Commissioner had the burden of proof to show the specific date Plaintiff was not disabled for purposes of her current claim. She contends her case is "strikingly similar" to *Miller*, and the ALJ should have shifted the burden of proof to the Commissioner.

In *Miller*, the claimant applied for benefits under Title II and Title XVI. 99 F.3d at 975. He was found disabled as of the date he filed his Title XVI application, but he was determined not to be disabled prior to that date, rendering him ineligible for Title II benefits. *Id*. The claimant established that his disability precluded him from performing his past work at step four, which resulted in the ALJ's deciding the case at step five and thus shifting the burden to the Commissioner to show the claimant had the RFC to perform other work in the national economy. *Id*. The ALJ, however, made the determination that the "evidence [was] insufficient to establish that the claimant was under a disability on or before" the date last insured. *Id*. at 976. The Tenth Circuit held the ALJ utilized an incorrect legal framework constituting reversible error because the absence of conclusive medical evidence cannot meet the Commissioner's step-five burden, and the ALJ's reliance on "the absence or paucity of medical evidence 'effectively shifts the burden back to the claimant.'" *Id*., quoting *Thompson*, 987 F.2d at 1491. The court concluded the ALJ should have instead "examined whether the evidence was sufficient for the Secretary 'to show that the claimant retain[ed] the . . . RFC to do other work that exists in the national economy' . . . prior to the expiration of his insured status." *Id*., quoting *Thompson*, 987 F.2d at 1487.

The Court finds that Plaintiff misconstrues *Miller's* application to this case. *Miller* involved the ALJ's reliance on "limited" or "insufficient" evidence when determining the claimant's RFC. 99 F.3d at 976. As previously mentioned herein, the ALJ did not rely on the absence or insufficiency of evidence when determining that Plaintiff had the RFC to perform sedentary work with additional limitations. When determining Plaintiff's RFC, the decision shows the ALJ relied upon Plaintiff's complaints, the testimony and opinions of the medical expert, examination findings from treatment records and consultative examinations, and the opinions of state agency consultants. (R. 1246-53).

Moreover, Plaintiff raised a similar burden of proof argument in *Daryn Lee W. v. Saul*, 2019 WL 4751551 (N.D. Okla. Sept. 30, 2019). The court in *Daryn Lee W.* rejected the claimant's arguments for two primary reasons, which the Court finds also apply to Plaintiff's case. First, the court found the claimant's case was not "strikingly similar" to *Miller* because *Miller* involved applications for Title XVI and Title II benefits, while the claimant's case involved applications under Title XVI. The court reasoned that a date last insured was not relevant to an application for Title XVI benefits. *See Daryn Lee W.*, 2019 WL 4751551, at *3. Here, Plaintiff's case also involved only applications for Title XVI benefits.

Second, the court in *Daryn Lee W.* explained that "*Miller* did not hold that if a claimant were found disabled at any time, the burden of proof at every step of the sequential analysis shifts to the Commissioner to prove the Claimant was not disabled at a prior time." *Id.* at *3. It noted that "*Miller* simply applies the well-established five-step analysis with the usual burdens – the claimant bears the burden to show he was disabled during the period of claimed disability at steps one through four, then the burden shifts to the Commissioner at step five to [show] that the claimant retains the RFC to do other work that exists in the national economy." *Id.*; *see also Miller*, 99 F.3d

at 975 ("Once a claimant has demonstrated, as Mr. Miller has here, that he cannot perform his past work because of his disability, 'the burden shifts to the Secretary to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy.'"), quoting *Thompson*, 987 F.2d at 1487.  Here, similar to *Daryn Lee W.*, the burden was not on the Commissioner in this case to provide medical evidence in support of the RFC assessment, but the burden was on Plaintiff.  2019 WL 4751551, at *3, *citing Howard*, 379 F.3d at 948-49 ("the agency's burden at step five does not include the burden to provide medical evidence in support of an RFC assessment, unless the ALJ's duty to further develop the record is triggered.").  Thus, the ALJ applied the proper burden of proof in this case.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 15th day of December, 2023.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT